IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


UNITED STATES OF AMERICA          )

                                  )

          v.                      )          No.  3:00-cr-129

                                  )

MICHAEL ALEXANDER ROBINSON     )



## MEMORANDUM AND ORDER


This matter is presently before the court on the following motions:


    (1)      Defendant's *pro se* objection to the presentence
investigative report (PSR) [Doc. 240];

    (2)      Defendant's motion to dismiss counts two, four
and five of the second superseding indictment [Doc. 247];

    (3)      Defendant's motion to exclude F.R.E. Rule 608
Cross-Examination of Specific Instances of Conduct, and
F.R.E. Rule 611(b) Limits on Cross-Examination at
Sentencing [Doc. 248];

    (4)      Defendant's motion for discovery material to
preparing the defense to the government's request for
special conditions to the extradition from Brazil [Doc. 249];

    (5)      The government's motion for hearing on
defendant's motions (Docs. 247 and 249) [Doc. 251];  and

(6)     Defendant's motion for clarification regarding the government's motion for hearing on defendant's motions [Doc. 255].

The issues raised have been fully briefed by the parties [*see* Docs. 247, 248, 249, 251, 252, 254, 255, 263 and 264; *see also* Doc. 253].  Consequently, the court finds that no hearing is necessary and the government's motion [Doc. 251] for such a hearing on two of those motions will be denied.  For the reasons that follow, all other motions will also be denied, and this matter will be reset for resentencing as required by the remand of the Sixth Circuit.  *See United States v. Robinson*, 390 F.3d 853, 889 (6th Cir. 2004).


I.

*Background Information*


Because of the amount of delay which has and continues to plague this case, a brief history of events which have transpired subsequent to the court of appeals December 2, 2004, reported decision is in order.  No matter the outcome at the time of resentencing, the court is confident that this case will be appealed so that it is imperative that no distortion of this facet of the record occur.

2

As just noted, the Sixth Circuit filed its opinion on December 2, 2004, remanding this case for resentencing. *Id.* The mandate for that opinion was filed on March 11, 2005 [*see* Doc. 237]. After the file was returned from the Sixth Circuit, this court sent an electronic notice on May 2, 2005, setting the resentencing for July 12, 2005.[1] However, the court became aware in early July 2005 that the defendant had not been transported by the U.S. Marshals Service because the court had failed to enter an order requiring the Bureau of Prisons (BOP) to relinquish custody of the defendant to the United States Marshal, so that the defendant could be transported to this district for resentencing. Accordingly, the court entered an appropriate order on July 7, 2005 [Doc. 241] which reset the resentencing for September 14, 2005.

Subsequently, the court was contacted by one or the other of counsel of record during the next few months whereby this matter was reset for resentencing on three more occasions, the last one being November 3, 2005. However, on October 30, 2005, a Sunday, and three business days before the hearing, defense counsel filed three of the pending motions [*see* Docs. 247-249], which necessitated a cancellation of that sentencing hearing. As will be discussed in more detail shortly, one of those motions required considerable investigation by the government regarding the existence of various documents relating to defendant's extradition from

_____

[1]It is the policy of this court to allow the United States Marshals Service at least 60 days to transport a defendant in federal custody to this court for a resentencing hearing.

3

Brazil so that, after the court granted two further motions for extension [*see* Docs. 258 and 261], the government was able to supplement its earlier position on February 28, 2006 [*see* Doc. 263]. Thus, all of these issues were not ripe until after that point in time.[2]

## II.

### *Defendant's Pro se Objection to PSR*

On June 20, 2005, a few weeks prior to his original resentencing date, the defendant, acting *pro se*, filed sentencing recommendations and an objection to the PSR. Essentially, the defendant contends that he should be sentenced to no more than five years imprisonment.

In a sentencing memorandum filed by his attorney on October 30, 2005, defendant contends that because the government failed to respond to this *pro se* pleading, the court should deem the government's failure to do so, consistent with the local rules of this court, *see* E.D.TN. LR 7.2,[3] as "a waiver of any opposition to the relief [the defendant] sought." [*See* Doc. 245, p.2].

---

[2]In fact, the government, apparently out of oversight, did not file a response to Doc. 248 until April 7, 2006 [*see* Doc. 264].

[3]Defense counsel erroneously cites to LR 7.1 as opposed to 7.2.

4

While it is undisputed that the government failed to file a response to this *pro se* pleading, another local rule of this district indicates that the government was most certainly not required to do so.  E.D.TN. LR 83.4(c) provides as follows:

> **Representation *Pro Se* After Appearance by Counsel.**
> Whenever a party has appeared by attorney, that party may not thereafter appear or act in his or her own behalf in any action or proceeding, unless an order of substitution shall first have been made by the court, after notice by the party to the attorney and to the opposing party.  However, the court may, in its discretion, hear a party in open court, notwithstanding the fact that the party is represented by an attorney.

A review of the record reflects that no order of substitution was filed in this case substituting the defendant for his attorney of record, Herbert S. Moncier.  Rather, the record reflects that Mr. Moncier has continued to represent this defendant - vigorously and zealously - throughout the entire tortured history of this case.  Thus, the government was not required to respond to these objections, nor is the court required to consider them.  These objections will therefore be overruled.

III.

*Motion to Dismiss Counts Two, Four and Five*
*of the Second Superseding Indictment*

Defendant's motion has several prongs.  First, defendant argues that "[t]he entry of the judgment of conviction and sentence of Mr. Robinson, over his

5

objection after his arrest in Brazil, violates the Brazil-United States treaty." [Doc. 247, p.3]. Consequently, defendant argues that the conviction must be set aside and the weapons counts dismissed.

Defendant's next argument is that the United States failed in its extradition request to ask the Supreme Court of Brazil for permission to apply a "'specialty' in the extradition." [*Id.*] Defendant therefore concludes that the United States has "waived" that condition [*id.* at p.4].

The defendant's third argument is that the Brazilian Supreme Court extradited him on the condition that "there would be no trial or punishment for weapons." [*Id.*]. Thus, defendant argues that the Brazilian Supreme Court did not authorize the United States to "retain the right" to impose punishment under the treaty. [*Id.*].

Finally, defendant contends that this court should not provide "an advisory opinion on what the United States government may decide to do on the release of Mr. Robinson regarding prosecution on counts one, four and five."[4] [*Id.*]. In other words, defendant seems to suggest that if the court is not inclined to grant

---

[4]Presumably, this is a typographical error as defense counsel probably means counts two, four and five, *i.e.*, the three firearm counts.

his motion to dismiss those three counts, then a ruling in the government's favor would, in effect, be an advisory ruling.

Addressing this latter point first, the court vigorously disagrees with defendant's position. To suggest that this court's adjudication of defendant's motion would be advisory unless, of course, it is in defendant's favor, is, among other things, disingenuous. More importantly, it would circumvent the order of remand by the Sixth Circuit. In the footnote following its conclusion, the Sixth Circuit observed as follows:

> Because we have determined that a remand is necessary, the district court also *should address at resentencing the extradition-related concerns raised by the government and noted earlier in this decision*.

*Robinson*, 390 F.3d at 889 n.43 (emphasis added). And, as noted by the Sixth Circuit earlier in that opinion:

> In a submission filed shortly before oral argument, the government advised us that a Brazilian court has agreed to Robinson's extradition on the Count One and Count Three drug convictions, but not on the firearms convictions charged in Counts Two, Four, and Five of the indictment. This ruling apparently is in accordance with the terms of the extradition treaty between the United States and Brazil, which does not include firearms offenses among the list of convictions subject to extradition. Accordingly, in the event that we affirm the district court's judgment, the government asks that we order a limited remand for entry of an order

7

conforming the terms of Robinson's incarceration to the
Brazilian court's extradition ruling.

*Id.* at 866 n.21.


Consistent with the above directives of the Sixth Circuit, the court will

now examine the extradition request of the government, the sentence of the

Brazilian Supreme Court, and the pertinent provisions of the treaty between the

United States and Brazil. The record first reflects that the government moved for the

defendant's extradition on all five convictions, *i.e.*, counts one through five. More

specifically, Extradition Request #846-3 reflects the following:

> SUMMARY: EXTRADITION. UNITED STATES OF
> AMERICA. CRIMES OF CONSPIRACY TO COMMIT
> NARCOTIC TRAFFICKING, POSSESSION OF
> NARCOTICS FOR DISTRIBUTION, AND CARRYING A
> FIREARM, RELATED TO TRAFFICKING BY A
> PREVIOUSLY CONVICTED PERSON.
>
> The request as to the offense of carrying a firearm
> cannot be granted since such conduct is not specified in
> art. II of the Extradition Treaty signed by Brazil and the
> United States, <u>nor has the petitioning government
> promised reciprocity</u>.
>
> Given that the remaining illegal acts in question are
> also punishable under Brazilian law, although Brazil has no
> criminal proceedings concerning the same case, and as
> there has been no prescription (sic) under the Brazilian and
> US legal system, there is no legal impediment to granting
> the request for extradition with regard to this part.

8

Extradition partially granted.

[*See* Doc. 251-2 p.2 (emphasis in original)]. The Brazilian Supreme Court then

stated as follows:

> The case files having been reviewed and the case stated and discussed, the Justices of the Federal Supreme, *en banc*, in accordance with the minutes of the judgment and the transcript of the court proceedings, hereby unanimously agree to partially grant the extradition, ruling out the possibility that the accused shall be liable for the crime of carrying a firearm.
>
> Brasilia, July 1, 2002

[*Id.* at pp.2-3].


As noted in its ruling, this case arises from Article II of the Extradition

Treaty between the United States and Brazil, which states in pertinent part that

"[p]ersons shall be delivered up according to the provisions of the present Treaty ...

to undergo sentence when they have been convicted of [] any of the following crimes

or offenses[.]" Treaty of Extradition, Jan. 13, 1961, US-Brazil, art. II, 1964 WL 70284

(US Treaty), 15 U.S.T. 2093, T.I.A.S. No. 5691. In its listing of convictions subject

to extradition, Article II does not include firearm offenses although it does specifically

include crimes "against the laws relating to the traffic in, use of, or production or

9

manufacture of, narcotic drugs or cannabis." *Id.* at ¶ 27. Thus, the ruling of the Brazilian court is entirely consistent with Article II of that treaty.

The other pertinent provision of the treaty is Article XXI, which provides as follows:

> A person extradited by virtue of the present Treaty may not be tried or punished by the requesting State for any crime or offense committed prior to the request for his extradition, other than that which gave rise to the request, nor may he be re-extradited by the requesting State to a third country which claims him, unless the surrendering State so agrees or unless the person extradited, having been set at liberty within the requesting State, remains voluntarily in the requesting State for more than 30 days from the date on which he was released. Upon such release, he shall be informed of the consequences to which his stay in the territory of the requesting State would subject him.

This provision, which is common in extradition treaties, is often referred to as the "Rule of Specialty." *See, e.g., United States v. Vreeken*, 803 F.2d 1085, 1088 (10th Cir. 1986).[5] This provision obligates the United States to limit subsequent criminal proceedings against a defendant only as to the convictions on which he is extradited. *See United States v. Rauscher*, 119 U.S. 407, 422-23 (1886); *Demjanjuk v. Petrovski*, 776 F.2d 571, 583 (6th Cir. 1985), *cert. denied*, 475 U.S. 1016 (1986). Under the Rule of Specialty, the United States may not proceed against a defendant

---

[5]The "Rule of Specialty" is also referred to as the "Principle of Specialty," *see Demjanjuk v. Petrovsky*, 776 F.2d 573, 583 (6th Cir. 1985), *cert. denied*, 475 U.S. 1016 (1986), as well as the "Doctrine of Specialty." *See United States v. Thirion*, 813 F.2d 146, 151 (8th Cir. 1987).

on any offenses as to which he is not extradited "until he shall have had a reasonable time to return unmolested to the country from which he was brought." *Rauscher*, 119 U.S. at 424; *United States v. Thirion*, 813 F.2d 146, 151 (8th Cir. 1987) (defendant, who had been extradited from foreign country, could not be convicted on conspiracy count, where asylum country did not agree to extradite defendant on that count). In considering this issue, the Eighth Circuit made the following observation regarding a district court's refusal to dismiss the conspiracy count of the indictment, similar to defendant's motion in this case:

> The district court, however, refused to dismiss [the conspiracy] count of the indictment. This decision was not necessarily in conflict with the Doctrine of Specialty since, although Thirion could not be convicted on the conspiracy count, the Treaty permits subsequent conviction should Thirion remain in the country after having been at liberty for one month to leave.

[*Id.*]. Furthermore, an extradition ruling does not affect the validity of the prior convictions or sentences; rather, it merely limits the court's personal jurisdiction over the defendant as to the non-extradited offenses. *See Johnson v. Browne*, 205 U.S. 309 (1907); *United States v. Vreeken*, 803 F.2d 1085, 1088 (10th Cir. 1986) (citing *Rauscher*, 119 U.S. at 432), *cert. denied*, 479 U.S. 1067 (1987).

Therefore, based on the above authorities and the unambiguous language of the US-Brazil treaty, defendant's motion to dismiss counts two, four and five of the second superseding indictment is not well taken. Rather, this court will

11

fully comply with the language of the treaty whereby the defendant will only be resentenced as to counts one and three of the second superseding indictment with respect to the drug offenses, the same two counts on which the Supreme Court of Brazil agreed to the defendant's extradition. Upon his release from imprisonment, defendant will then have 30 days within which to return to Brazil or run the risk that the government will seek resentencing on the other three counts on which he has already been convicted by a jury.

## IV.

### Defendant's Motion to Exclude Cross-Examination on Specific Conduct and to Restrict Cross-Examination to the Subject Matter of Direct Examination

In this motion, defendant moves, pursuant to F.R.E. 608 and 611, to restrict the government's cross-examination to the subject matter of direct examination. In his motion, the defendant refers to a "proffer of relevant information to controverted issues" [*see* Doc. 248, p.3]. As best the court can ascertain, this is a reference to defendant's sentencing proffer [*see* Doc. 250]. A fair reading of this sentencing proffer indicates that it is essentially a denial of defendant's guilt to many of the facts of the offenses to which he stands convicted by a jury. In other words, the defendant now wishes to testify under limited cross-examination concerning what appears to be the entire spectrum of proof in this case.

12

It is well settled that cross-examination need not be limited to express questions posed on direct examination; rather, the inquiry may elicit responses that reasonably relate to the inferences and implications drawn from direct testimony. *United States v. Moore*, 917 F.2d 215, 222 (6th Cir. 1990) (no abuse of discretion in refusing to limit government's cross examination to specific details of direct examination where the implications of direct testimony were very broad), *cert. denied*, 498 U.S. 963 (1991). Consequently, the court does not intend to limit the government's cross-examination of the defendant in view of his pronouncements as outlined in his proffer. Hence, the defendant's motion will be denied.

In so ruling, however, the court notes that the court may limit the defendant's direct examination, and thereby his cross-examination, because the court does not intend for defendant to retry this entire case during his resentencing hearing.

V.

***Defendant's Motion for Discovery of Documents
Material to the Preparation of His Defense***

In this motion, defendant demands that the government produce for his copying and inspection the following documents:

13

1.      All records of any agency of the United States or any cooperating foreign government, including Brazil, pertaining to defendant's whereabouts on and after his escape up until his arrest in Brazil on November 29, 2001, including messages, reports, surveillance or any other document or record;

2.      All records of the proceedings on extradition of the defendant at any level of the United States government or Brazil or any Brazilian court;  and

3.      Any communications to or from the United States Attorney's Office for the Eastern District of Tennessee and any other agency of the government as to the extradition proceedings of Mr. Robinson, including any communications as to the United States Attorney's Office in the Eastern District of Tennessee proceeding to defendant's sentencing *in absentia*.

[*See* Doc. 249, pp.4-5].  Defendant's basis for these demands is his accusation that the government engaged in some sort of nefarious conspiracy and acted in bad faith by proceeding to have the defendant sentenced *in absentia* approximately one week before he was apprehended.  Defendant's request, however, must be rejected for several reasons.

First, defendant continues to posture this case as one in which he is entitled to pretrial discovery.  Defendant appears to demand all of the above documents in order to relitigate fully all issues previously tried to a jury.  It is totally improper and unnecessary.  Furthermore, in view of the affidavits of AUSA David P. Folmar, Jr. [*see* Doc. 253, pp.3-5], and Rebecca J. Gambill, a Deputy United States

14

Marshal for the Eastern District of Tennessee [*see id.*, pp.6-7], defendant's allegations regarding the government's bad faith in convincing this court to sentence the defendant *in absentia* have no merit whatsoever.  There is no proof to support defendant's theories regarding any bad faith on the part of the government in prosecuting this case.  There is only defendant's speculation and conjecture that the government knew where he was in Brazil.[6]

Additionally, the government has provided to the defendant the key document in determining the present posture of this case, that is, the Portugese version of the Brazilian court order.  That document has been previously considered and analyzed by the court.  As already indicated, the defendant will be afforded all

---

[6]There is no question that the government had information the defendant was, in fact, in Brazil.  For example, during the sentencing hearing of co-defendant Kawyn N. Logan on October 2, 2001, defendant's counsel stated the following to the court:

> Mr. Delius:    Your Honor.  Mr. Logan believes he knows where Mr. Robinson is.  Mr. Robinson, in all likelihood, is in Brazil, based on the fact that he has a brother that's a fugitive in Brazil as well.  That's what he informed the Marshals Service.  Obviously he doesn't know his location, how he would get there.

> The Court:    We don't have any extradition, do we on Brazil?

> Mr. Folmar:    All that stuff is on-going right now, Your Honor.  And its being handled by the Marshals Service.  And we have interviewed him about that.  According to Becky Gambill, who is a deputy U.S. Marshal, she indicated that the information that he had on that was nothing more than what was known jail-wide.

[*See* Doc. 219, p.6].  The court takes judicial notice of the fact that Brazil is an enormous country and locating the defendant there would be no small feat.

rights pursuant to the ruling of the Brazilian Supreme Court and the Brazil-US Treaty.

Finally, the court is hard pressed to comprehend what possible prejudice has occurred to the defendant even if there was any bad faith on the government's part. The defendant escaped from the Blount County Jail. He then managed to travel to Brazil, a country which does not allow extradition on firearms charges. Consequently, when defendant comes before this court for resentencing, he will not - at this juncture - be resentenced on those firearms charges. He will only be resentenced on his drug-related offenses. In effect, the defendant will be rewarded for his escape by this anomaly in the applicable international law. Nevertheless, the government and this court are bound by the terms of that treaty and the defendant will be resentenced accordingly. He will not, however, be heard to complain about his inability to burden the government and this court with additional and totally unnecessary discovery requests under these circumstances.

VI.

### Government's Motion for a Hearing

In view of the above actions taken by the court and the positions of the parties being fully developed in their briefs, the government's motion for hearing with

16

respect to defendant's motion to dismiss counts two, four and five [Doc. 247] and his

motion for discovery materials [Doc. 249] will be denied.


## VII.

### *Defendant's Motion for Clarification Regarding the Government's Motion for a Hearing*


Also, in view of the above actions taken by the court, defendant's motion

for clarification will likewise be denied.


## VIII.

### *Conclusion*


Therefore, for the reasons foregoing, the following motions are hereby

DENIED:


(1)     Defendant's *pro se* objection to the presentence
investigative report [Doc. 240];

(2)     Defendant's motion to dismiss counts two, four
and five of the second superseding indictment [Doc. 247];

(3)     Defendant's motion to exclude F.R.E. Rule 608
Cross-Examination of Specific Instances of Conduct, and
F.R.E. Rule 611(b) Limits on Cross-Examination at
Sentencing [Doc. 248];

17

(4)     Defendant's motion for discovery material to preparing the defense to the government's request for special conditions to the extradition from Brazil [Doc. 249];

(5)     The government's motion for hearing on the defendant's motions (Docs. 247 and 249) [Doc. 251];  and

(6)     Defendant's motion for clarification regarding the government's motion for hearing on defendant's motions [Doc. 255].

This matter is hereby RESET for resentencing on **May 15, 2006, at 2:00**

**p.m.**

**E N T E R :**

_____ _s/ James H. Jarvis_ _____
UNITED STATES DISTRICT JUDGE